Matthew M. Levy, J.
The defendant North American Cigarette Manufacturers, Inc., moves for dismissal of the complaint against it for legal insufficiency. It is alleged in the complaint that the plaintiff agreed with the defendant Kronisch that, in return for certain work, labor and services in connection with the promotion of a certain process owned by the defendant Kronisch, the latter would pay to the plaintiff a sum equal to 10% of whatever sum might be received by Kronisch as the result of a sale or other disposition of the process. It is then alleged that in order to deprive the plaintiff of the said payments, the defendants conspired fradulently to do the following things:
(a) To form a corporation known as North American Cigarette Manufacturers, Inc. (the moving defendant), and they did organize the company in July, 1957. (There is nothing in the complaint to indicate that, in exploiting the process, the defendant Kronisch agreed not to organize such a corporation, or that the defendants could not rightfully do so.)
(b) The defendants would cause the process to be sold and assigned to that corporation. (Such a transaction was not prohibited and, indeed, Kronisch — as alleged in the complaint — was authorized to sell or otherwise dispose of the process, and it was from the proceeds of such sale or other disposition that he was to give 10% to the plaintiff.)
(c) The defendants would cause the corporation to issue certain shares of its stock to each of the defendants McCarthy *239 and Kronisch in partial payment for the sale to it of the process. (This was not prohibited, and the plaintiff is able to claim 10% of the shares from the defendant Kronisch.)
(d) In issuing the shares to the defendant McCarthy, such shares actually were to be so issued for the benefit of the defendant Kronisch. (Here, of course, is an opportunity for the plaintiff to pursue further the 10% to which he claims to be entitled and such a claim would not be a basis for relief against the corporation, save as the company may be made a party defendant as a proper party to effectuate any judgment obtained in an appropriate action which would result in recovery by the plaintiff and to effectuate the transfer of such shares on the books of the corporation.)
(e) The defendants would then enter into an agreement with the defendant N. Pinsker & Co., Inc., for the sale of common shares of North American to the public at a price of $5.50. (This does not appear to refer to the shares that were delivered to the defendants Kronisch and McCarthy in payment of the purchase price of the process upon its sale to the corporation. But even if it did, the alleged unlawful import and effect are not at all clear, unless the price were fraudulently minimal so as to affect the plaintiff’s recovery — and that is not alleged.)
(f) The defendants would manufacture a certain cigarette under the trade name of “Diplomat” and advertise it upon a claim to the American public that the cigarette is safer for smoking, all as a result of this process used in the making of Diplomat. (This is entirely permissible activity, so far as the allegations of the complaint are concerned. In paragraph Third thereof, the plaintiff specifically alleges that the Kronisch process was one for neutralizing nicotine in tobacco and its use in the manufacture of cigarettes.)
(g) The defendant N. Pinsker & Co., Inc., would demand and receive from the defendant North American commissions on the sale of stock of North American to the public at stated rates. (The purport of this allegation is not clear, since it is not indicated that the stock which was thus being sold was the stock which had been given to Kronisch as the purchase price for the sale of the process. )
Finally, it is alleged that the fair and reasonable value of the consideration received by Kronisch is in excess of $1,000,000, and that the plaintiff is entitled to 10% thereof, or $100,000. The plaintiff demands judgment in that amount and that the defendants account to the plaintiff for a sum equal to 10% of the fair and reasonable value of whatever has been received by the defendant Kronisch as the result of the sale. This may be con *240 ceived as a prayer for the relief to the effect that there be transferred to the plaintiff 10% of the shares beneficially issued to Kronisch except that what the plaintiff seeks by way of the 1 ‘ Wherefore ’ ’ clause is an accounting, and there is no basis in this complaint for an accounting against North American.
Nor may North American be held as a party upon the contention that it is in fact only a corporate shield for unlawful activities of the individual defendants. In my view, there has been no wrongful activity alleged or wrongful purpose (Miller v. Spitzer, 224 App. Div. 39, 40) save, perhaps, the sole possibility that the stock was issued to McCarthy on behalf of Kronisch. But the cause of action, as alleged, reaches neither that grievance nor any grievance against the moving defendant. The plaintiff’s sole defense of his complaint is that the moving defendant has caused itself to be incorporated so as to use the corporate entity to channel funds to the defendant Kronisch. This is not at all a prohibited activity under the contract as alleged.
There is another defect in the pleading that should be mentioned. In paragraph Fifth, the plaintiff alleges full performance, except as prevented, although no alleged acts of prevention are stated nor what it is that the plaintiff was to perform under the written contract (which is not annexed to the complaint). The allegation is wholly conclusory and ineffective (Acoustic Chem. Corp. v. Gottlob, 22 Misc 2d 438).
The motion is granted, and the complaint is dismissed, with leave to serve an amended complaint within 20 days after the service of a copy of the order hereon with notice of entry.